UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Application of<br>GRAND CAPITAL ASSET MANAGEMENT LTD.,<br><br>For an Order Pursuant to 28 U.S.C. § 1782 to<br>Conduct Discovery for Use in Foreign Proceedings | Case No. 20 Misc._____ |

## DECLARATION OF JAMES FOX IN SUPPORT OF *EX PARTE* APPLICATION FOR JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782

I, the undersigned, James Fox, under oath and penalty of perjury, pursuant to 28 U.S.C. § 1746, and duly authorized, declare the following:

1. I am over the age of 18 and the facts set forth herein are based on my own personal knowledge or from information provided to me by others. Where facts are within my personal knowledge, I can affirm that they are true. Where the information is provided to me by others, I state the source of my knowledge and affirm it is true to the best of my information and belief.

2. I am a Solicitor of the Senior Courts of England and Wales, registered practitioner by the Dubai Legal Affairs Department. I am counsel for Grand Capital Asset Management ("Applicant") in the contemplated foreign proceeding described below.

3. I submit this Declaration in support of Applicant's application for an Order, pursuant to 28 U.S.C. § 1782, authorizing intermediary bank discovery in connection with a contemplated foreign proceeding before the Sharjah Court of First Instance, major circuit, in the United Arab Emirates ("UAE") by Applicant against Gulf Technical Commercial Printing Press LLC ("Gulf Technical") to recover a debt in the amount of USD 1,999,710.00 owed by Gulf Technical to Applicant (the "Debt").

## I. FACTUAL BACKGROUND

4. Applicant provides services for online trading on financial markets to traders around the world.

5. Gulf Technical is a printing press company registered in Sharjah, UAE, bearing license number 12437, which expired on August 27, 2018. Upon information and belief, its shareholders are Ramesh Lilaramani ("Ramesh") (49%) and Mubarak Bil Aswad ("Mubarak") (51%). Based upon Applicant's investigation and the expired license, it appears that Gulf Technical is no longer active. Indeed, I am advised that Applicant's agents have made multiple site visits to Gulf Technical's former headquarters, finding them empty each time. Its phones appear disconnected and further emails go unanswered. Additionally, according to Applicant's investigation, Gulf Technical, which formerly had an active social media profile, has been quiet on that front for several years.

### A. The Underlying Debt

6. On July 11, 2017, Stenn Assets UK Limited ("Stenn") entered into a Framework Agreement 272-STN-17 ("FA") with Gulf Technical's supplier RV International (FZC) Limited ("RV") (Exhibit 1).

7. Under the terms of the FA, RV would assign its interest to payments due and owing from Gulf Technical arising out of certain accounts receivable to Stenn. Between July and August 2017, RV assigned the following Gulf Technical account receivables to Stenn totaling USD 1,999,710.00 (Exhibits 2 to 5):

- Invoice No. 07/2017-18/378 for USD 679,740.00;
- Invoice No. 07/2017-18/410 for USD 350,900.00;
- Invoice No. 07/2017-18/413 for USD 350,220.00;
- Invoice No. 08/2017-18/425 for USD 216,000.00;
- Invoice No. 08/2017-18/426 for USD 253,000.00; and
- Invoice No. 08/2017-18/427 for USD 149,850.00.

8. In each instance where RV assigned an invoice to Stenn, RV also provided Gulf Technical with a Notice of Assignment of Accounts Receivables (Exhibits 2 to 5). These Notices, *inter alia*, (i) detailed the invoice number and the amount owed; (ii) affirmed that title to the goods related to the accounts receivable have passed from the supplier to Gulf Technical; and (iii) reiterated Gulf Technical's obligation to pay the underlying debt. Each Notice of Assignment of Accounts Receivables was duly signed by Ramesh on behalf of Gulf Technical.

9. On December 28, 2017, Stenn assigned the entirety of the Debt to Applicant (Exhibit 6). On January 6, 2019, CMS Credit Management Services LLC, acting on behalf of Applicant under the authority of a power of attorney (Exhibit 7), provided a Notice of Assignment of Right to the Debt (together with the Notices of Assignment of Accounts Receivable the "Agreements") to Gulf Technical (Exhibit 8).

**B.      Collection Efforts and Investigation**

10. Notwithstanding its obligations under the Agreements, Gulf Technical has failed to make any of the required payments and the entirety of the Debt remains outstanding.

11. Before assigning the Debt to Applicant, I understand Stenn made numerous efforts to communicate with Gulf Technical to ascertain whether a payment plan or other arrangement could be reached. For example, on November 29, 2017, Stenn's General Counsel sent an "urgent payment request letter" to Ramesh, demanding payment of the Debt (Exhibit 9). It is my understanding that Stenn has also made similar contact via text and email.

12. These efforts have been unsuccessful and I believe Gulf Technical has shown no indication that it intends to pay the Debt.

13. According to historical website information, prior to its demise Gulf Technical's management structure was as follows: (i) Ramesh – Managing Director; (ii) Rajesh Lilaramani

("Rajesh") – Chief Executive Officer; (iii) Vasudev Lilaramani ("Vasudev") (father to Ramesh and Rajesh, and company founder) – Chairman; (iv) Piyush Loonker ("Piyush") – Chief Financial Officer; and (v) Tariq bin Shamsheer Bakshi ("Tariq") – Head of Cost Estimation.[1]

14. In the course of its investigation, I am advised Applicant has identified a series of companies associated with Gulf Technical, including companies also in the printing press business: (i) Digital World Printing Press LLC, believed to be based in Sharjah; (ii) Labelco, believed to be based in Sharjah; (iii) Bending Works, believed to be based in Sharjah; and (iv) Gulf Agenda International FZC, believed to be based in the Hamriyah Free Zone.[2]

15. Stenn's interactions with Gulf Technical, as well as broader research, evidence that Ramesh managed Gulf Technical's day-to-day operations, although his brother Rajesh was involved significantly (their father Vasudev founded the company). For example, in a recent interview by the UAE magazine "Masala," Rajesh described his luxury day-to-day lifestyle and the success of Gulf Technical: "My dad who with his hard work transformed a small thought into a successful reality, which is today known as Gulf Technical. Also, my elder brother has been a great source of inspiration and has always been there for me" "I start work at 9am sharp as I am a stickler for punctuality. Throughout the day I am busy with meetings or events. I try and finish work by 8pm […];" "My favourite holiday spot… Hong Kong. My daughter is busy with Disney land, my wife is busy shopping and I am busy holidaying in Macau."[3]

16. Rajesh also owned two now-closed Dubai luxury bars and restaurants: The Stock Exchange and Jodhpur. In a Gulf News 2016 interview, Rajesh stated that opening a luxury Indian restaurant such as Jodhpur requires an investment of at least $1 million: "A global

---

[1] https://web.archive.org/web/20190217152916/http://gtcpp.com/ (last visited March 19, 2020)
[2] https://web.archive.org/web/20190217152916/http://gtcpp.com/ (our group section) (last visited March 19, 2020)
[3] https://www.masala.com/15-minutes-with-rajesh-lilaramani-159857.html (February 20, 2020 interview of Rajesh: "The talented Rajesh Lilarmani of Gulf Technical, on his life, Bollywood and more") (last visited March 19, 2020).

slowdown and difficulty in finding talent notwithstanding, the past year has seen half a dozen new luxury Indian restaurants open — or planned — in Dubai alone. Each requires an investment upwards of $1 million (about Dh3.67 million), according to Rajesh Lilaramani who owns Jodhpur."[4]

17. Further, based on Applicant's investigation, Gulf Technical has been a defendant in several proceedings in the UAE courts and appears to have had multiple unsatisfied judgments issued against it totaling over GBP 11,000,000.00 (Exhibit 10, screenshots of a local gazette that publishes notices mandated by the court). It is also noted that pursuant to the investigation Packwell Printing Press LLC and Bondage Works for Decor Panels Fabrication were both co-defendants in UAE court proceedings initiated against Gulf Technical (Exhibit 11).

18. On information and belief, Ramesh has also been subject to a significant number of criminal complaints for, inter alia, dishonoured checks (a criminal offence in the UAE). Whilst we are unaware of the status of these cases, we believe that Ramesh has at least once been sentenced to imprisonment and there are a number of active arrest warrants and active travel bans against him.

19. I understand that this led Applicant to reasonably believe that Gulf Technical and its principals have dissipated and misappropriated assets that should have been used to pay the Debt owed to Applicant.

**II.    THE CONTEMPLATED FOREIGN PROCEEDING AND FOREIGN TRIBUNAL**

20. Considering Gulf Technical's failure to pay the Debt despite Applicant's repeated demands and efforts to collect on its Debt, Applicant is now contemplating initiating proceedings before the Sharjah Court of First Instance, major circuit.  Federal Law No. 11 of 1992, as

---

[4] https://gulfnews.com/travel/destinations/indian-food-makes-for-a-sensory-ride-in-dubai-1.1879023 (Gulf News article "Indian food makes for a sensory ride in Dubai") (last visited March 19, 2020).

amended (the "UAE Civil Procedures Law"), provides that the courts of the UAE shall have jurisdiction to examine the actions of individuals who have residence or domicile in the UAE. Unless the parties to the dispute have elected on the jurisdiction of a certain court to examine and resolve the dispute, the UAE Civil Procedures Law mandates that the applicable UAE court shall be that in whose circuit the defendant's domicile exists. Therefore, as Gulf Technical is an entity domiciled in the Emirate of Sharjah, it is appropriate for Applicant to commence the contemplated proceedings before the Sharjah Court of First Instance, major circuit. Applicant intends to advance claims for (1) breach of contract for Gulf Technical's failure to comply with its obligations under the Agreements by refusing to pay its Debt owed to Applicant, and (2) for improper transfers of funds that should have been used to satisfy the Debt owed to Applicant (collectively, the "Claims" and the "Contemplated Proceeding").

### III. THE CLAIMS

#### A. Breach of Contract

21. In 2017, Gulf Technical engaged RV for the delivery of varying types and quantities of paper in the aggregate amount of USD 1,999,710.00, details of which are documented in Gulf Technical's local purchase orders and the following commercial invoices (the "Commercial Invoices"):

- Invoice No. 07/2017-18/378 dated July 8, 2017;
- Invoice No. 07/2017-18/410 dated July 24, 2017;
- Invoice No. 07/2017-18/413 dated July 25, 2017;
- Invoice No. 08/2017-18/425 dated August 1, 2017;
- Invoice No. 08/2017-18/426 dated August 1, 2017; and
- Invoice No. 08/2017-18/427 dated August 1, 2017.

22. The terms of payment, as expressed in the Commercial Invoices, required Gulf Technical to effect payment within one hundred and twenty (120) days from the date of the

6

respective Commercial Invoice being issued. Accordingly, the Commercial Invoices should have been settled on the following dates:

- Invoice No. 07/2017-18/378 -  5 November 2017;
- Invoice No. 07/2017-18/410 – 21 November 2017;
- Invoice No. 07/2017-18/413 – 22 November 2017;
- Invoice No. 08/2017-18/425 – 29 November 2017;
- Invoice No. 08/2017-18/426 – 29 November 2017; and
- Invoice No. 08/2017-18/427 – 29 November 2017.

23. Following RV's assignment of the entire Debt to Stenn, RV provided Gulf Technical with a Notice of Assignment of Accounts Receivables for each of the amounts owed by Gulf Technical under the Commercial Invoices. Each Notice of Assignment of Accounts Receivables restated the due date of the Commercial Invoices. Moreover, by executing each Notice of Assignment of Accounts Receivables, Gulf Technical expressly accepted the assignment and confirmed its obligation to settle the account receivable in favour of Stenn in the amounts and by the dates specified in the Commercial Invoices. Such right to the Debt was subsequently assigned to the Applicant as set out at paragraph 9.

24. Notwithstanding the aforementioned and the payment dates having lapsed, to date the Commercial Invoices remain outstanding, evidencing Gulf Technical's breach of contract.

**B.     Improper Transfers of Funds**

25. The Applicant believes that Gulf Technical may have wrongfully transferred funds to related entities and third parties in order to avoid satisfying its contractual obligations and settling the outstanding Debt.

26. It should be noted that pursuant to Federal Law No. 5 of 1985, as amended (the "UAE Civil Transactions Law"), the assets of a debtor stand as security for the performance of the debtor's obligations, and all creditors have equal standing, subject to any special provisions

7

of the law. More specifically, Article 396 of the UAE Civil Transactions Law mandates that a debtor has an obligation to maintain the value of its assets for the benefit of its creditors. Therefore, in circumstances where a debtor's obligations, whether due or deferred, exceed or are equal to the debtor's assets, the debtor may not make any voluntary dispositions that it is not bound to make and that would preclude it from satisfying its existing debts. If a debtor has acted in contravention of such obligations contained in the UAE Civil Transactions Law, a creditor may apply for an order declaring that any such dispositions in the preceding three (3) years are ineffective. In order to effect the aforementioned, the creditor will solely need to prove that an obligation is owed to it by the debtor, whilst the debtor will need to establish whether it has sufficient assets to satisfy the liability. If the debtor does not have sufficient assets to cover its obligations and the creditor can evidence that the debtor has made unnecessary voluntary dispositions notwithstanding its outstanding obligations, the court will unwind said dispositions in order for the creditor to recover all or part of the debt owed.

27. Therefore, the Applicant seeks discovery (as further detailed herein) to obtain evidence of Gulf Technical's disposition of assets (by transfers of funds) in order to plead its claims before the Sharjah Court of First Instance, major circuit, and obtain an order that such dispositions be unwound, ultimately allowing it to recover all or part of the Debt.

## IV. NATURE OF THE DISCOVERY SOUGHT

28. Applicant seeks assistance from the United States District Court for the Southern District of New York to obtain intermediary bank discovery from Citibank, N.A., The Bank of New York Mellon, Société Générale, HSBC Bank USA, N.A., BNP Paribas USA, JPMorgan Chase Bank, N.A., Barclays Bank PLC, Deutsche Bank Trust Co. Americas, Bank of Nova Scotia, UBS AG, Bank of America, N.A., Standard Chartered Bank US, Commerzbank

AG US, and The Clearing House Payments Company, LLC (collectively, the "Respondents"), for use in the Contemplated Proceeding. The Respondents are commonly known to act as correspondent, intermediary, or otherwise clearing house banks for U.S. Dollar-denominated wire transfers passing from domestic banks to international banks, and vice versa.

29. Based on its investigation described above, Applicant has identified a series of individuals and companies associated with Gulf Technical and Rajesh. Therefore, Applicant seeks information relating to those companies and individuals, namely — (i) Ramesh; (ii) Rajesh; (iii) Vasudev; (iv) Piyush; (v) Tariq; (vi) Mubarak; (vii) Digital World Printing Press LLC; (viii) Labelco; (ix) Bending Works; (x) Gulf Agenda International FZC; (xi) Packwell Printing Press LLC; (xii) Bondage Works for Decor Panels Fabrication; (xiii) The Stock Exchange; and (xiv) Jodhpur (collectively, the "Discovery Subjects"). In the interest of full disclosure, Mubarak may hold his shareholding on a nominee basis to comply with requirements that a UAE company is 51% held by a UAE national.

30. Therefore, Applicant seeks to obtain meaningful information from the Respondents located in this District that are in the business of processing U.S. Dollar denominated wire transfers in New York City, and will have processed wire transfers relevant and probative to advance Applicant's Claims in the Contemplated Proceeding it intends to initiate. Specifically, Applicant seeks discovery to obtain evidence of intermediary bank transfers and documents relating thereto to plead and prove its Claims that Gulf Technical breached the Agreements, and dissipated and misappropriated assets that should have been used to satisfy the Debt owed to Applicant.

31. Applicant seeks evidence maintained by the Respondents in New York City regarding U.S. Dollar denominated wire transactions and documents relating thereto.

Specifically, the discovery sought from the Respondents is evidence of wire transfers routed through the Respondents in New York City revealing the complete picture of Gulf Technical and Rajesh's movement of funds, and the identity of other entities or individuals that may have engaged in suspicious transactions with Gulf Technical and may have assisted it in dissipating and misappropriating its assets. In addition, as a result of Applicant's business dealings with Gulf Technical and the evidence obtained by Applicant to date, it is clear that Gulf Technical conducts significant transactions in U.S. Dollar. Such evidence makes it very likely that the U.S. Dollar denominated wire transactions routed through New York City and documents relating thereto, will reveal the information sought by Applicant to advance its Claims in the Contemplated Proceeding — namely, transactions of value made with funds that should have been used to satisfy the Debt owed to Applicant. Accordingly, the evidence sought is critical to plead and prove Applicant's Claims.

32. I am advised by New York counsel that the Respondents, from whom discovery is sought, reside or are found in the Southern District of New York, within the meaning of 28 U.S.C. §1782.

33. The Respondents are not expected to become a party to the Contemplated Proceeding, and as such, this Application constitutes the only practical and timely method for obtaining the needed evidence for use there. Indeed, absent the instant Application, the complete evidence would almost certainly remain outside the reach of the Sharjah courts.

34. Further, there is no indication that the Sharjah courts would not be receptive to the documentary evidence sought through the instant Application. Such evidence is likely admissible in the Contemplated Proceeding. The Application does not circumvent any proof-gathering restriction under the laws of the UAE.

35. The discovery sought to be served on Respondents is not intrusive or unduly burdensome because it is of limited scope. Applicant seeks limited records relating to wire transactions for which the Respondents were involved as originating bank, beneficiary bank, intermediate or correspondent bank to CHIPS, Fedwire, or where the Respondents otherwise facilitated interbank funds transfers, as well as documents relating thereto, for the limited period beginning July 1, 2017 to the present. This period is likely within the Respondents' document retention policies and the documentary evidence sought is of the type that Respondents regularly and easily retrieve and produce as third parties or actual parties in litigation.

## V. APPLICANT SHOULD NOT BE REQUIRED TO GIVE NOTICE TO GULF TECHNICAL, THE DISCOVERY SUBJECTS AND THE RESPONDENTS

36. Applicant respectfully requests that (1) Applicant not be required to serve Gulf Technical, the expected respondent in the Contemplated Proceeding, the Discovery Subjects or the Respondents with this Application and, (2) should the Court grant this Application, that Applicant not be required to serve Gulf Technical and the Discovery Subjects with the order granting the Application.

37. As explained above, the discovery sought from the Respondents will assist Applicant in further assessment and development of its Claims in the Contemplated Proceeding. Most importantly, the documentary evidence will assist Applicant in pleading and proving both Gulf Technical's breach of the Agreements and its engagement in wrongful transfers to the detriment of Applicant.

38. As a result of Applicant's efforts to recover its Debt without involving the Sharjah courts, the investigation conducted to date, and Gulf Technical's clear intent not to pay the Debt, Applicant has a good faith reason to believe that Gulf Technical has dissipated and

misappropriated its assets that should have been used to satisfy the Debt, in order to evade its obligation to pay the Debt owed to Applicant.

39. In light of the above, notice of the Application and of the order granting the Application (should the Court grant the Application), would advance Gulf Technical's scheme by providing it the opportunity to potentially conceal or destroy evidence that could be used by Applicant in the Contemplated Proceeding and/or further divert its assets, and would delay and undermine Applicant's full understanding of Gulf Technical's movement of assets and discovery of the identity of other entities or individuals that may have assisted Gulf Technical in carrying out its scheme.

40. The information sought through this *ex parte* Application is the only practical and efficient way Applicant can obtain the discovery sought. Applicant would be significantly delayed in obtaining critical information to advance its Claims if the Court requires notice of the Application and order granting the Application, which would ultimately prejudice Applicant.

41. Conversely, there would be no prejudice to the party (or parties) against whom the discovery is likely to be used—namely Gulf Technical, the expected defendant—as it would be permitted to contest any evidence submitted by Applicant to the Sharjah Court of First Instance, major circuit, during the Contemplated Proceeding irrespective of how such evidence was obtained.

## VI.    CONCLUSION

42. In light of the foregoing, Applicant respectfully submits that all of the requirements of 28 U.S.C. § 1782 are met:

    a. The Respondents reside and/or are found in this District;

    b. Applicant is an "interested person" within the meaning of the statute; and

  c. Applicant seeks to obtain documents and testimony for use in a foreign proceeding.

43. To my knowledge no previous application for this relief has been made in the United States.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 22nd day of May, 2020, in Dubai, United Arab Emirates.

By: _____

13

70443219-1